# Supreme Court of Florida

_____

No. SC12-2153
_____

**ELAINE HESS, etc.,**
Petitioner,

vs.

**PHILIP MORRIS USA, INC.,**
Respondent.

[April 2, 2015]

QUINCE, J.

Elaine Hess seeks review of the decision of the Fourth District Court of

Appeal in Philip Morris USA, Inc. v. Hess, 95 So. 3d 254 (Fla. 4th DCA 2012), on

the ground that it expressly and directly conflicts with the decision of the Third

District Court of Appeal in Frazier v. Philip Morris USA Inc., 89 So. 3d 937 (Fla.

3d DCA 2012), approved, No. SC12-1401 (Fla. Apr. 2, 2015), and the decisions in

Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), Pulmosan Safety Equip.

Corp. v. Barnes, 752 So. 2d 556 (Fla. 2000), Kush v. Lloyd, 616 So. 2d 415 (Fla.

1992), Diamond v. E. R. Squibb & Sons, Inc., 397 So. 2d 671 (Fla. 1981), Laschke

v. Brown & Williamson Tobacco Corp., 766 So. 2d 1076 (Fla. 2d DCA 2000),

McLeod v. Barber, 764 So. 2d 790 (Fla. 5th DCA 2000), and Ambrose v. Catholic

Soc. Servs., Inc., 736 So. 2d 146 (Fla. 5th DCA 1999), on a question of law. We

have jurisdiction. See art. V, § 3(b)(3), Fla. Const.[1]

The question before the Court, in this Engle[2]-progeny case, is whether

plaintiff's fraudulent concealment claim is barred pursuant to section 95.031(2),

Florida Statutes (1993), the statute of repose for fraud claims, because the jury

found no evidence of the smoker's reliance within the statute of repose period, i.e.,

from May 5, 1982, through May 5, 1994. We answer that question in the negative

because it is the defendant's last act or omission which triggers the fraud statute of

repose. Accordingly, we quash the Fourth District's decision in Hess, approve

Frazier to the extent of its conclusion regarding the statute of repose, and approve

Kush and Laschke. We reinstate the jury verdict rendered below.

## FACTS AND PROCEDURAL HISTORY

As surviving spouse of Stuart Hess and personal representative of his estate,

Elaine Hess filed a complaint against Philip Morris USA, Inc. ("PM USA"), in the

Seventeenth Judicial Circuit, in and for Broward County, asserting claims of strict

liability, fraudulent concealment, negligence, and conspiracy to commit fraud. In

---

1. While we accepted jurisdiction of Hess based on Hess's petition for review, we denied PM USA's petition for review. See Philip Morris USA, Inc. v. Hess, No. SC12-2151 (Fla. June 3, 2013).

2. Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).

- 2 -

her fraudulent concealment claim, Mrs. Hess alleged that the defendants[3] concealed or omitted material information not otherwise known or available knowing that the material was false or misleading, or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes, or both. The complaint alleged that Mr. Hess detrimentally relied and died as a proximate result of the defendants' fraud. Punitive damages were sought in her fraudulent concealment and conspiracy to commit fraud claims. It was admitted in the complaint that Mr. Hess bore some fault for his smoking-related injuries and death. PM USA pleaded the statute of repose as an affirmative defense.

Mrs. Hess moved for partial summary judgment as to Engle affirmative defenses, arguing that the Engle Phase I findings were res judicata, and consequently, the relitigation of any defenses that were actually litigated or could have been litigated in Phase I were precluded. Mrs. Hess claimed that proof of reliance for her fraud claims was no longer an issue because of the defendants' involvement in fraud by concealment and the res judicata effect of the Phase I finding. The trial judge ruled that the statute of repose defense was unavailable.

---

3. In addition to PM USA, the complaint named R.J. Reynolds Tobacco Co., Lorillard Tobacco Co., Liggett Group, LLC, and Vector Group Ltd., Inc. as defendants.

During the first phase of the trial,[4] Mrs. Hess testified that Mr. Hess began smoking in the 1950s at twelve or thirteen years of age. He smoked about one to two packs a day when they met in 1963. Mrs. Hess also described Mr. Hess as a chain smoker, smoking two to three packs a day, which fluctuated. Mrs. Hess testified that Mr. Hess smoked Benson & Hedges 100's soft pack cigarettes— manufactured by PM USA—about 95% to 99% of the time, and smoked Marlboro products the remaining times. Mr. Hess smoked only filtered cigarettes because he believed they were safer and "caught all the bad stuff." Mr. Hess believed and trusted the cigarette companies. In the mid-1970s, Mr. Hess first attempted to stop smoking. He tried often to cut down or stop smoking. Mrs. Hess denied that he had ever quit smoking permanently. In February 1996, Mr. Hess was told that he had lung cancer. On cross-examination, Mrs. Hess admitted that she and Mr. Hess discussed the Surgeon General's report from the mid-1960s, which stated that smoking was harmful. Mr. Hess, however, had "tremendous doubt" as to the report because the cigarette company executives stated that smoking was not harmful, and he doubted the accuracy of the warnings. The jury found that Mr. Hess was addicted to cigarettes containing nicotine and that such addiction was a legal cause of his death.

_____

4. The first phase involved whether the factual prerequisites for the Engle class were established. The second phase decided issues of compensatory damages and comparative fault, followed by punitive damages.

- 4 -

During the second phase of the trial, Mrs. Hess testified that she and her husband saw tobacco executives on television commenting that cigarettes were safe, and that Mr. Hess believed what the executives were saying. Mr. Hess did not attempt to quit prior to the mid-1970s because he believed the companies, he was taken in by the advertisements, and he was addicted. However, a friend of Mr. Hess testified at trial that Mr. Hess "was aware of smoking being dangerous" prior to the mid-1970s.

Mrs. Hess presented evidence that between 1953 and 1997, the tobacco companies were successful in using all their tricks and power to conceal the danger of smoking from the American people. In 1988, the Surgeon General reported that nicotine is addictive. Mrs. Hess offered evidence that despite knowing internally that nicotine was addictive, the tobacco companies denied publicly that it was addictive. Philip Morris first publicly admitted that nicotine was addictive around the year 2000. The jury heard a Tobacco Institute spokesperson in 1983 explain "we don't know what causes the ailments that have been attributed to cigarette smoking . . . . I don't think that there's a causal relationship established between cigarette smoking and any disease."

Before deliberations, the jury was instructed that PM USA "concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the

health effects or addictive nature of smoking cigarettes or both." The trial judge also instructed the jury that it "must determine whether [Mr.] Hess relied to his detriment on any statements made by [PM USA] that omitted material information," and if he did so rely, then to consider whether punitive damages were warranted. The conspiracy to commit fraud claim was never submitted to the jury.

The jury awarded compensatory damages as follows: $2 million in favor of Mrs. Hess and $1 million in favor of Mr. Hess's son. PM USA and Mr. Hess were found by the jury to be 42% and 58% at fault, respectively. The jury was specifically asked on the verdict form, "Did [Mr.] Hess rely to his detriment on any statement by [PM USA] that omitted material information which caused or contributed to his injury and death?," and if so, whether such reliance took place before May 5, 1982, after May 5, 1982, or both before and after May 5, 1982. The jury indicated that Mr. Hess did rely and that it occurred only before May 5, 1982. Finding that Mrs. Hess was entitled to punitive damages, the jury awarded her $5 million. Final judgment was entered in favor of Mrs. Hess for $6.26 million.

PM USA moved for judgment as a matter of law on the fraudulent concealment claim, arguing that in light of the jury's finding that Mr. Hess's detrimental reliance took place only before May 5, 1982, PM USA did not defraud

Mr. Hess within the twelve-year statute of repose period (May 5, 1982, through

May 5, 1994). The trial court denied PM USA's motion.

On appeal to the Fourth District, PM USA claimed that the trial court erred

in denying its motion for judgment as a matter of law on the fraudulent

concealment claim. Hess, 95 So. 3d at 256. The district court noted that the

elements of a fraudulent concealment claim are as follows:

> (1) the tobacco companies concealed or failed to disclose a material
> fact; (2) the companies knew or should have known the material fact
> should be disclosed; (3) the companies knew their concealment of or
> failure to disclose the material fact would induce the plaintiffs to act;
> (4) the tobacco companies had a duty to disclose the material fact; and
> (5) the plaintiffs detrimentally relied on the misinformation.

Id. at 259 (quoting R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1068

(Fla. 1st DCA 2010)). The district court explained that while the Engle jury found

that the tobacco companies "concealed or omitted material information not

otherwise known or available knowing that the material was false or misleading or

failed to disclose a material fact concerning the health effects or addictive nature of

smoking cigarettes or both," plaintiffs must still prove reliance in a fraud-based

claim and juries must be instructed on reliance and damages. Id. (quoting Engle,

945 So. 2d at 1277). The district court noted that fraud claims, pursuant to the

statute of repose, "must be begun within 12 years after the date of the commission

of the alleged fraud." Id. at 260 (citing § 95.031(2), Fla. Stat. (1993)). Because it

found that the "commission of the alleged fraud" necessarily includes all of the

elements of a fraud claim, the Fourth District held that there must be evidence establishing all of the elements, including reliance, during the repose period. Id. at 261. Applying its holding to the Engle context, the district court determined that any fraud committed before May 5, 1982, is barred by the statute of repose. Id. at 260. The district court therefore concluded that the fraudulent concealment claim and the punitive damages award were foreclosed by the statute of repose because PM USA did not defraud Mr. Hess within the repose period as the jury found that Mr. Hess relied to his detriment on an omission by PM USA only before May 5, 1982. Id. at 260-61. Accordingly, the Fourth District reversed for entry of judgment in PM USA's favor on the fraudulent concealment claim and punitive damages award, and affirmed in all other respects.[5] Id. at 261.[6]

---

5. PM USA had also claimed on appeal that the trial court misapplied the Engle findings and erred in denying its motion to remit the punitive damages award. Id. at 256. Mrs. Hess cross-appealed to the extent that the trial court reduced the compensatory damages award based on the comparative fault of Mr. Hess. Id.

6. The parties' motions for rehearing and motions for rehearing en banc were denied by the Fourth District. The Fourth District followed its holding in Hess in Philip Morris USA Inc. v. Cohen, 102 So. 3d 11, 15 (Fla. 4th DCA 2012) (stating that plaintiff must prove that the smoker relied upon the tobacco companies' statements or omissions made after May 5, 1982); Philip Morris USA, Inc. v. Kayton, 104 So. 3d 1145, 1151 (Fla. 4th DCA 2012) (explaining that whether a fraudulent act was committed within the repose period can only be determined based on the timing of the alleged reliance); and Philip Morris USA, Inc. v. Naugle, 103 So. 3d 944, 947 (Fla. 4th DCA 2012), review denied, 135 So. 3d 289 ("Because fraudulent concealment requires proof of reliance, [plaintiff's]

## ANALYSIS

The issue presented is whether an <u>Engle</u>-progeny plaintiff's fraudulent

concealment claim is barred by section 95.031(2), the fraud statute of repose,

because there is no evidence of the smoker's reliance within the twelve-year repose

period. The standard of review on a question of law is de novo. <u>See</u> <u>Pino v. Bank</u>

<u>of N.Y.</u>, 121 So. 3d 23, 31 (Fla. 2013). When construing a statute, the Court's

initial responsibility is to give the words their plain and ordinary meaning:

> In making a judicial effort to ascertain the legislative intent
> implicit in a statute, the courts are bound by the plain and definite
> language of the statute and are not authorized to engage in semantic
> niceties or speculations. If the language of the statute is clear and
> unequivocal, then the legislative intent must be derived from the
> words used without involving incidental rules of construction or
> engaging in speculation as to what the judges might think that the
> legislators intended or should have intended.

<u>Durden v. Am. Hosp. Supply Corp.</u>, 375 So. 2d 1096, 1098-99 (Fla. 3d DCA 1979)

(quoting <u>Tropical Coach Line, Inc. v. Carter</u>, 121 So. 2d 779, 782 (Fla. 1960)).

"Where a statute of limitations shortens the existing period of time the statute is

generally construed strictly, and where there is reasonable doubt as to legislative

intent, the preference is to allow the longer period of time." <u>Baskerville-Donovan</u>

<u>Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n, Inc.</u>, 581 So. 2d 1301, 1303

(Fla. 1991). In construing the statute of repose relating to medical malpractice

---

claim is barred unless the record demonstrates that she justifiably relied on
statements or omissions made after that date [May 5, 1982].").

claims, we have said that "ambiguity, if there is any, should be construed in favor of the plaintiffs." Silva v. Sw. Fla. Blood Bank, Inc., 601 So. 2d 1184, 1187 (Fla. 1992). Before deciding the issue before us, we first discuss our decision in Engle, compare statutes of limitations with statutes of repose, and review relevant decisions from our district courts of appeal.

## Engle

On May 5, 1994,[7] smokers and their survivors filed a class action complaint against cigarette companies—including "Philip Morris Incorporated (Philip Morris U.S.A.)"—and industry organizations for damages allegedly caused by smoking-related injuries. Engle, 945 So. 2d at 1254, 1256 n.3. The Engle class was defined as "[a]ll [Florida] citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Id. at 1256. The complaint consisted of claims of fraud and misrepresentation, conspiracy to commit fraud and misrepresentation, strict liability in tort, breach of express warranty, breach of implied warranty of merchantability and fitness, negligence, and intentional infliction of mental distress. R.J. Reynolds Tobacco Co. v. Engle, 672 So. 2d 39, 40 (Fla. 3d DCA 1996).

---

7. See Engle v. RJ Reynolds Tobacco, No. 94-08273CA-22, 2000 WL 33534572, at *5 (Fla. Cir. Ct. Nov. 6, 2000).

In Phase I of the trial, the Engle jury decided issues common to the entire class, including general causation, the Engle defendants' common liability to the class members for the conduct alleged in the complaint, and the class's entitlement to punitive damages. Engle, 945 So. 2d at 1256. At the conclusion of the Phase I trial, the Engle jury returned a verdict in favor of the class on all counts. Id. at 1256-57. Notably, in question number 4a ("Fraud by Concealment") of the Phase I verdict form, the jury was asked the following question as to each defendant:

> Did one or more of the Defendants conceal or omit material information, not otherwise known or available, knowing the material was false and misleading, or failed to disclose a material fact concerning or proving the health effects and/or addictive nature of smoking cigarettes?

The jury found that each of the Engle defendants committed fraud by concealment. Having answered the question posed to it in the affirmative as to each defendant, the jury was further directed to find whether each defendant's conduct occurred before May 5, 1982, after May 5, 1982, or both before and after May 5, 1982. With the exception of Brooke Group, Ltd., Inc., all of the defendants' conduct were found to have occurred both before and after May 5, 1982.[8]

At the conclusion of Phase II, the jury awarded $12.7 million in compensatory damages to three individual plaintiffs and $145 billion in punitive

---

8. The jury found that the conduct of Brooke Group, Ltd., Inc., took place only after May 5, 1982.

damages to the entire class.  Id. at 1254.  In its final judgment and amended omnibus order, the trial judge in Engle denied the defendants' motion for directed verdict on the issue of the statute of repose.  Engle, 2000 WL 33534572, at *5.

The district court vacated the $145 billion punitive damages award, which we approved.  Engle, 945 So. 2d at 1276.  We decertified the Engle class "because individualized issues such as legal causation, comparative fault, and damages predominate[d]," but allowed class members to file individual actions against the defendants within one year of the issuance of our mandate.  Id. at 1254, 1268.  We stated that the following Phase I common liability findings made by the jury in favor of the class would be given res judicata effect in the individual actions brought against the defendants:

> 1 (that smoking cigarettes causes [certain named diseases, including lung cancer]), 2 (that nicotine in cigarettes is addictive), 3 (that the [Engle] defendants placed cigarettes on the market that were defective and unreasonably dangerous), 4(a) (that the [Engle] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both), 5(a) (that the [Engle] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment), 6 (that all of the [Engle] defendants sold or supplied cigarettes that were defective), (7) (that all of the [Engle] defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants), and 8 (that all of the [Engle] defendants were negligent).

- 12 -

Id. at 1254, 1276-77 (emphasis added). "[T]he Phase I verdict against the Engle defendants resolved all elements of the claims that had anything to do with the Engle defendants' cigarettes or their conduct." Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 432 (Fla.), cert. denied, 134 S. Ct. 332 (2013). "[T]he Phase I findings establish the Engle defendants' common liability for the strict liability, negligence, breach of express and implied warranty, fraudulent concealment, and conspiracy to fraudulently conceal claims alleged by the Engle class." Id. at 436 (emphasis added).

The Phase I jury "did not consider whether any class members relied on Tobacco's misrepresentations or were injured by Tobacco's conduct. . . . [T]he Phase I jury 'did not determine whether the defendants were liable to anyone.' " Engle, 945 So. 2d at 1263 (quoting Liggett Group Inc. v. Engle, 853 So. 2d 434, 450 (Fla. 3d DCA 2003)). We explained that "individual causation" must be decided in the individual lawsuits. Id. at 1254. Although we concluded that the common liability Phase I findings relating to fraudulent concealment were to have res judicata effect, we disapproved the use of the Phase I conduct findings as to fraud and misrepresentation (and civil conspiracy based on misrepresentation) because they were "inadequate to allow a subsequent jury to consider individual

questions of reliance and legal cause." Id. at 1255.[9] We did not discuss the statute of repose in our opinion.

**Statutes of Limitations v. Statutes of Repose**

To carefully analyze the issue presented, it is important to compare statutes of limitations with statutes of repose. "Both the statute of limitations and the statute of repose are affirmative defenses." Johnston v. Hudlett, 32 So. 3d 700, 704 (Fla. 4th DCA 2010) (quoting Doe v. Hillsborough Cnty. Hosp. Auth., 816 So. 2d 262, 264 (Fla. 2d DCA 2002)); see also Fla. R. Civ. P. 1.110(d) (listing "statute of limitations" as an affirmative defense as well as "any other matter constituting an avoidance or affirmative defense"). The defendant has the burden to prove an affirmative defense. Hough v. Menses, 95 So. 2d 410, 412 (Fla. 1957).

Statutes of limitations "bar actions by setting a time limit within which an action must be filed as measured from the accrual of the cause of action, after which time obtaining relief is barred." Merkle v. Robinson, 737 So. 2d 540, 542 n.6 (Fla. 1999); see also Bauld v. J. A. Jones Constr. Co., 357 So. 2d 401, 402 (Fla. 1978). Statutes of limitations "begin[] to run upon the accrual of a cause of action except where there are provisions which defer the running of the statute in cases of

---

9. Additionally, we disapproved the use of the intentional infliction of emotional distress Phase I conduct findings. Id.

fraud or where the cause of action cannot be reasonably discovered." Kush, 616 So. 2d at 418.

The Florida Legislature has determined that the time within which an action generally must be begun under any statute of limitations is from the time the cause of action "accrues." § 95.031, Fla. Stat. (2014). An action "accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. The Legislature carved out the following exceptions to the accrual-date trigger: claims of fraud (§ 95.031(2)(a), Fla. Stat.)[10] and products liability actions (§ 95.031(2)(b), Fla. Stat.); tolling exceptions provided in section 95.051(1)(a)-(i), Florida Statutes (2013); and "elsewhere in these statutes." § 95.031, Fla. Stat.

On the other hand, statutes of repose "bar actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." Merkle, 737 So. 2d at 542 n.6 (citing Kush, 616 So. 2d at 418); see also Carr v. Broward Cnty., 505 So. 2d 568, 570 (Fla. 4th DCA 1987) ("The period of time established by a statute of repose commences to run from the date of an event specified in the statute . . . . At the end of the time period the cause of action ceases to exist."), approved, 541 So. 2d

_____

10. The statute of limitations for claims of fraud is four years, § 95.11(3)(j), Fla. Stat. (2014), "run[ning] from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence," § 95.031(2)(a), Fla. Stat.

- 15 -

92 (Fla. 1989). "[T]he statute of repose may be constitutionally applied to bar claims even when the cause of action does not accrue until after the period of repose has expired." Damiano v. McDaniel, 689 So. 2d 1059, 1060 (Fla. 1997). "[S]tatutes of repose are a valid legislative means to restrict or limit causes of action in order to achieve certain public interests." Carr, 541 So. 2d at 95. Statutes of repose are "legislative determination[s] that there must be an outer limit beyond which [claims] may not be instituted," "attempt[ing] to balance the rights of injured persons against the exposure of [defendants] to liability for endless periods of time." See Kush, 616 So. 2d at 421-22. Certainly, over time "memories fade, documents are destroyed or lost, and witnesses disappear." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So. 2d 201, 209 (Fla. 2003).

In Kush, we clearly expressed that statutes of repose "run[] from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued." 616 So. 2d at 418 (emphasis added);[11] see also Nehme, 863 So.

_____

11. In Kush, this Court interpreted section 95.11(4)(b), Florida Statutes (1985), the statute of repose governing medical malpractice claims, containing a four-year statute of repose from the date of the "incident" or "occurrence." Id. at 418. In 1976, the plaintiff gave birth to a baby with an abnormality. Id. at 417. At or before December 1978, a doctor told plaintiff that there was no genetic defect and that she could have another child without incident. Id. In December 1983, plaintiff gave birth to a second son who had a genetic abnormality. Id. Thereafter, plaintiff discovered that the first child had the same genetic deformities as the second child. Id. Plaintiff filed a claim of wrongful birth in December 1985. Id. This Court agreed that the statute of repose ran from the date the negligent advice was given, not from the date of birth of the second child. Id. at 418. Therefore, we

- 16 -

2d at 208-09 ("[S]tatutes of repose address a countervailing concern—that is, the difficulty in defending against a lawsuit many years after the <u>conduct</u> at issue occurred.") (emphasis added).  In line with <u>Kush</u>, the United States Supreme Court recently explained that the statute of repose:

> puts an outer limit on the right to bring a civil action.  <u>That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant</u>.  A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury."

<u>CTS Corp. v. Waldburger</u>, 134 S. Ct. 2175, 2182 (2014) (emphasis added) (quoting <u>Black's Law Dictionary</u> 1546 (9th ed. 2009));[12] <u>see also</u> <u>Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 597 F.3d 84, 88 n.4 (2d Cir. 2010) ("[A] statute of repose <u>extinguishes</u> a plaintiff's cause of action after the passage of a fixed period of time, <u>usually measured from one of the defendant's acts</u>.") (second emphasis added).

---

held that plaintiff's claim was extinguished by the statute of repose since the second child was born more than four years after the negligent diagnosis.  <u>Id.</u> at 424.

12.  The issue in <u>CTS Corp.</u> was whether a provision of The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, which pre-empts statutes of limitations applicable to state law tort actions in certain circumstances, also preempts state statutes of repose.  <u>Id.</u> at 2180.

## The Statute of Repose for Fraud Claims

Effective in 1975, section 95.031, which included the statute of repose governing fraud claims, has essentially remained unchanged. <u>See</u> ch. 74-382, §§ 3, 36, Laws of Fla. (1974). The twelve-year statute of repose for fraud claims provides as follows:

> [I]n any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

§ 95.031(2), Fla. Stat.[13] Therefore, the statute of repose runs from "the date of the commission of the alleged fraud." If the "commission of the alleged fraud" does not take place within the statute of repose period, then the fraud claim is extinguished. In <u>Engle</u>, the statute of repose period is from May 5, 1982, through May 5, 1994, because this encompasses the twelve-year period preceding the filing of the <u>Engle</u> complaint. There is no tolling provision for the fraud statute of repose.[14]

---

13. Presently, the fraud statute of repose is in section 95.031(2)(a).

14. In contrast, the Legislature expressly created a tolling provision for the statute of repose governing products liability claims. <u>See</u> § 95.031(2)(d), Fla. Stat. ("The repose period . . . is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect."); <u>see also</u> § 95.031(2)(c), Fla. Stat. (providing that the statute of repose period for products liability claims "does not apply if the claimant was exposed to or used the product within the repose period,

## District Courts' Decisions

In Frazier v. Philip Morris USA Inc., 89 So. 3d 937 (Fla. 3d DCA 2012), the tobacco companies argued on appeal that the statute of repose required the Engle-progeny plaintiff to prove, in her fraudulent concealment and conspiracy to conceal claims, that she relied upon a deceptive statement or omission after May 5, 1982. Id. at 947. The Third District disagreed, stating:

> We conclude that the last act done in furtherance of the alleged conspiracy fixes the pertinent date for purposes of commencement of the statute of repose, and we conclude that Ms. Frazier introduced evidence of deceptive statements or omissions occurring after May 5, 1982. Laschke v. Brown & Williamson Tobacco Corp., 766 So. 2d 1076, 1078 (Fla. 2d DCA 2000). We reject the [defendants'] contention that Ms. Frazier was obligated to show further or continued reliance upon the alleged last act in furtherance of the conspiracy.

Id. at 947-48.[15] Thus, the Third District held that plaintiff's reliance during the repose period was not necessary because it is the last act done in furtherance of the alleged conspiracy that triggers the statute of repose. But see Lorillard Tobacco Co. v. Alexander, 123 So. 3d 67, 75 (Fla. 3d DCA 2013) ("Since the statute of repose begins in 1982, Coleman's belief and reliance through 1985 was relevant to show that his cause of action was not barred by the statute.").

---

but an injury caused by such exposure or use did not manifest itself until after expiration of the repose period").

15. The Third District in Frazier reversed and remanded for a new trial, finding there was no competent record evidence that plaintiff's claims accrued before the statute of limitations bar date. Id. at 939.

Frazier relied on Laschke, a pre-Engle decision from the Second District

Court of Appeal which explained that the statute of repose "runs not from the time

a cause of action accrues, but from the date of a discrete act on the part of a

defendant." 766 So. 2d at 1078 (citing Kush, 616 So. 2d at 416). The district court

in Laschke found that the critical date for the statute of repose relating to

conspiracy claims "should be the date of the last act done in furtherance of the

conspiracy." Id. at 1079.[16] The Second District continued to rely on Laschke in an

Engle-progeny case. See Philip Morris USA, Inc. v. Hallgren, 124 So. 3d 350, 353

(Fla. 2d DCA 2013).

In R.J. Reynolds Tobacco Co. v. Webb, 93 So. 3d 331 (Fla. 1st DCA),

review denied, 107 So. 3d 406 (Fla. 2012), the First District Court of Appeal stated

that "[i]n claims alleging conspiracy, the critical date for statute of repose purposes

should be the date of the last act done in furtherance of the conspiracy." Id. at 333

(quoting Laschke, 766 So. 2d at 1079). Finally, in R.J. Reynolds Tobacco Co. v.

---

16. PM USA relies on Shepard v. Philip Morris Inc., No. 96-1720-CIV-T-26B, 1998 WL 34064515 (M.D. Fla. Apr. 28, 1998), holding that the plaintiffs' continuing fraud theory did not operate to extend the statute of repose. Id. at *4. In its reasoning, the court noted that there was an absence of any indication that Florida law permitted tolling of the repose period under the circumstances. Id. The Shepard decision, however, predated Laschke. We are also mindful of Joy v. Brown & Williamson Tobacco Corp., No. 96–2645CIV–T24(B), 1998 WL 35229355 (M.D. Fla. May 8, 1998), finding the defendants entitled to summary judgment on a civil conspiracy to defraud claim where the plaintiff failed to adduce any proof of reliance upon a misrepresentation within the statute of repose period. Id. at *5.

<u>Hiott</u>, 129 So. 3d 473 (Fla. 1st DCA 2014), the First District recently held that <u>Webb</u> "foreclose[d] relief" to a defendant who claimed that the trial court erred in refusing to instruct the jury that it must find that the smoker detrimentally relied after May 5, 1982, in order to find the defendant liable. <u>Id.</u> at 476, 478.[17] The district court certified conflict with the Fourth District's decision in <u>Hess</u> "on the question of whether the trial court erred in denying Reynolds' requested jury instruction on the statute of repose." <u>Id.</u> at 475. On January 31, 2014, the defendant filed a notice to invoke jurisdiction of the <u>Hiott</u> decision, which we stayed pending disposition of the case at bar.

### Reliance During the Statute of Repose Period is Irrelevant

Pursuant to the statute of repose, fraud claims "must be begun within 12 years after the date of the commission of the alleged fraud." § 95.031(2), Fla. Stat. In construing the medical malpractice statute of repose, we defined "fraud" generally as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." <u>Nehme</u>, 863 So. 2d at 205 (citing <u>Black's Law Dictionary</u> 670 (7th ed. 1999)). Such definition focuses on the tortfeasor's action or inaction.

---

17. Plaintiff's claims included fraudulent concealment and civil conspiracy to fraudulently conceal. <u>Id.</u> at 475.

- 21 -

Engle-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment claims. While we look to reliance in determining when an action accrued for the application of the fraud statute of limitations, the accrual of an action has no bearing on the fraud statute of repose. Because statutes of repose "run[] from the date of a discrete act on the part of the defendant," Kush, 616 So. 2d at 418, we hold that the defendant's last act or omission triggers Florida's fraud statute of repose. In other words, we find that "the date of the commission of the alleged fraud" under section 95.031(2), refers to the defendant's wrongful conduct. Thus, we conclude that for statute of repose purposes it is not necessary that the smoker relied during the twelve-year repose period. Where there is evidence of the defendant's wrongful conduct within the repose period, the statute of repose will not bar a plaintiff's fraudulent concealment claim.

In its Phase I verdict form, the Engle jury found that the Engle defendants committed fraud by concealment based on conduct that occurred after May 5, 1982, i.e., during the statute of repose period. Because we hold that the defendants' last act or omission triggers the fraud statute of repose and since the Engle jury found that the Engle defendants' fraudulent concealment conduct occurred within the repose period, we conclude that the Engle defendants are

precluded as a matter of law from asserting the fraud statute of repose defense in Engle-progeny cases.

We therefore quash the Fourth District's decision in Hess, which required that there be evidence of the smoker's reliance during the repose period as to Mrs. Hess's fraudulent concealment claim. We additionally find that Mrs. Hess presented evidence of PM USA's fraudulent concealment conduct within the statute of repose period. Because we conclude that PM USA was precluded from raising the fraud statute of repose defense to Mrs. Hess's fraudulent concealment claim, the jury verdict should not have been disturbed on appeal.[18]

## CONCLUSION

Based on the foregoing, we quash the Fourth District's decision in Hess, approve Frazier to the extent of its conclusion pertaining to the statute of repose, and approve Kush and Laschke. We reinstate the jury verdict rendered below.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

---

18. In light of our holding, we do not address Mrs. Hess's constitutional access to courts claim.

Fourth District - Case No. 4D09-2666

(Broward County)

John Stewart Mills and Courtney Rebecca Brewer of The Mills Law Firm, P.A., Tallahassee, Florida; Gary Mark Paige of Trop & Ameen, P.A., Davie, Florida and Adam Trop of Trop & Ameen, P.A., Fort Lauderdale, Florida; Bruce S. Rogow and Tara A. Campion of Bruce S. Rogow, P.A., Fort Lauderdale, Florida; Alex Alvarez of The Alvarez Law Firm, Coral Gables, Florida; and Marvin Weinstein of Grover & Weinstein, P.A., Miami Beach, Florida,

     for Petitioner

Joseph Hagedorn Lang, Jr. of Carlton Fields Jorden Burt, P.A., Tampa, Florida; and Andrew Scott Brenner, Patricia Melville, and Luis Eduardo Suárez of Boies, Schiller & Flexner, LLP, Miami, Florida; and Raoul G. Cantero, III and John-Paul Rodriguez of White & Case LLP, Miami, Florida,

     for Respondent

Steven L. Brannock, Celene Harrell Humphries, and Tyler K. Pitchford of Brannock & Humphries, Tampa, Florida,

     for Amici Curiae Engle