# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1053

_____

PHILIP MORRIS USA INC.,

    Appellant,

    v.

VEDA BRYANT, Personal
Representative of the Estate of
Johnny Lee Bryant; R.J.
REYNOLDS TOBACCO COMPANY,

    Appellees.

_____

On appeal from the Circuit Court for Escambia County.
W. Joel Boles, Judge.

May 6, 2019

WINSOR, J.

Veda Bryant won a $681,000 judgment against Philip Morris USA Inc. based on her late husband's addiction to—and injuries from—smoking cigarettes. Philip Morris now appeals, arguing that it is entitled to a new trial because plaintiff's counsel asked an improper question and made an improper comment during closing argument. Philip Morris also argues, in the alternative,

that a 2001 stipulation in the original *Engle*[1] litigation requires a reduction of the punitive damages award.

First, we agree with Philip Morris and the trial court that Bryant's counsel asked an improper question in front of the jury. As Bryant's counsel was presenting expert testimony about the history of tobacco production and consumption, counsel asked the expert to translate the slogan "veni, vidi, vici," which had appeared on packages of Marlboro cigarettes. The expert testified that "[i]t's Latin. I came, I saw, I conquered."[2] Counsel then followed with this question: "[B]ased on the market sales that we've seen in terms of Philip Morris' earnings over the years, and the 40-some year conspiracy, did Marlboro come, see and conquer?" The court promptly sustained Philip Morris's objection before the expert could respond.

The trial court recognized that counsel's question was an improper one, and it would be hard to argue otherwise. But the question we face was whether the trial court was obligated to grant Philip Morris's motion for mistrial. We review the court's ruling only for an abuse of discretion, *Anderson v. State*, 841 So. 2d 390, 403 (Fla. 2003), and we conclude the trial court acted within its broad discretion. Improper as the question was, we cannot conclude that in the overall context of the entire trial, the unanswered question was "so prejudicial as to vitiate the entire trial." *Id.* Similarly, we conclude the trial court did not abuse its discretion in denying Philip Morris's separate motion for mistrial relating to Bryant's closing argument, and we affirm the trial court's related denial of Philip Morris's motion for new trial.

Next, we must decide whether a stipulation in the *Engle* case required a reduction of the punitive damage award in this case.

---

[1] *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006) (Per curiam opinion with two Justices joining and four Justices joining opinions concurring in part).

[2] The well-known phrase is, of course, attributed to Julius Caesar. *See* Veni, vidi, vici, *Wikipedia*, available at https://en.wikipedia.org/wiki/Veni,_vidi,_vici, last visited May 5, 2019.

Consistent with holdings from the Second and Third Districts, we conclude that it does not.

In 1994, a group of plaintiffs initiated a class-action case against Philip Morris and others. *See Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 693 (Fla. 2015) (explaining *Engle* history). The trial court certified a class, the matter went to trial, and the jury awarded some $145 billion in punitive damages. *Id.* (Philip Morris's share of the punitive damages was roughly $74 billion.) The Florida Supreme Court later decertified the class, concluding that "individualized issues such as legal causation, comparative fault, and damages predominate[d]," but it allowed members of the decertified class to initiate individual cases, *id.* (quoting *Engle*), which Bryant did.

Long before the supreme court issued its *Engle* decision, the *Engle* class and defendants (including Philip Morris) entered into a stipulation staying execution of the $145 billion judgment pending appeal. The stipulation, which the *Engle* trial court approved, required the defendants to place approximately $2 billion in escrow to secure payment of at least that much of the judgment. The parties agreed that a portion ($500 million) of the funds Philip Morris contributed would be paid to the class even if the award was reversed on appeal. The parties further agreed that this amount, known as the "guaranteed sum," would "constitute a dollar-for-dollar credit against, and [would] not be construed to be a payment obligation in addition to, payment of the punitive damages component of the Judgment against Participating Defendant in the event such component of such Judgment (or any portion thereof) is affirmed or required to be paid." It is that provision that Philip Morris contends entitles it to a credit in this case. The stipulation defined the "Judgment" as "the judgment . . . that was entered in this [*Engle*] action on November 3, 2000." Thus, the question we face is whether the punitive damages award in Bryant's case constitutes a "punitive damages component of" the original *Engle* judgment. Or, as Philip Morris framed it below: "the textual question for the court is this: May the Participating Defendants be deprived of the dollar-for-dollar credit provided by the Stipulation on the theory that punitive awards in *Engle* progeny cases are independent of the *Engle* judgment?"

3

We conclude that no portion of Bryant's judgment constitutes "the punitive damages component of" the *Engle* judgment. It is true that certain findings from the original *Engle* trial have res judicata effect in individual actions like this one. *See Hess*, 175 So. 3d at 694; *see also Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 432 (Fla. 2013). And it may well be that without those findings, Bryant would not have successfully established liability below. But that does not mean this judgment is a "punitive damages component" of the 2000 *Engle* judgment. "The doctrine of res judicata bars relitigation [of certain matters] in a subsequent cause of action," *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004), but it does not make a later judgment a component of the earlier one. There are still separate judgments. Here, Bryant's judgment was an independent judgment, separate and apart from the *Engle* judgment. We therefore agree with the Second and Third Districts, which have held that the 2001 *Engle* stipulation does not require a credit against judgments in individual *Engle*-progeny cases. *See Philip Morris USA, Inc. v. Ledoux*, 230 So. 3d 530, 541 n.6 (Fla. 3d DCA 2017) (rejecting claim "that Defendants were entitled to a credit against the punitive damages judgment, based on the Guaranteed Sum Stipulation arising out of the original Engle litigation"); *Philip Morris USA Inc. v. Boatright*, 217 So. 3d 166, 173 (Fla. 2d DCA 2017) ("[T]he Guaranteed Sum Stipulation specifically applied to the judgment in *Engle* and is not applicable to the judgment in this case.").

AFFIRMED.

LEWIS and M.K. THOMAS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Rosemary Szanyi, Geoffrey J. Michael, and David M. Menichetti of Arnold & Porter Kaye Scholer LLP, Washington D.C.; Laura Whitmore of Shook, Hardy & Bacon LLP, Tampa; and Connor J.

4

Sears or Shook, Hardy & Bacon LLP, Kansas City, Missouri, for Appellant.

Douglas Eaton of Eaton & Wolk, PL, Miami, for Appellee Bryant.