# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2104
_____

R.J. REYNOLDS TOBACCO
COMPANY,

    Appellant/Cross-Appellee,

    v.

LINDA PRENTICE, as Personal
Representative of the Estate of
John C. Price,

    Appellee/Cross-Appellant.

_____

On appeal from the Circuit Court for Duval County.
Tyrie W. Boyer, Judge.

October 24, 2019

ROWE, J.[1]

R.J. Reynolds Tobacco Company (RJR) appeals from a final judgment entered in favor of Linda Prentice, as personal representative of the Estate of John C. Price (the Estate), on her wrongful death claim. RJR raises several grounds for reversal and the Estate raises several issues on cross-appeal. We write only to address RJR's argument that the trial court erred by denying

_____

[1] Judge Rowe did not participate in the oral argument held on July 18, 2018, but she did review the video recording of the argument.

RJR's request for a special jury instruction on conspiracy to commit fraudulent concealment.  The trial court's refusal to give the special jury instruction on conspiracy to commit fraudulent concealment was an abuse of discretion because the proposed instruction was a correct statement of the law, was supported by the facts, was necessary for resolving the issues, and the failure to give the instruction was prejudicial.

*Facts*

Price filed an individual *Engle*[2] lawsuit before his death, alleging that his Chronic Obstructive Pulmonary Disease was caused by his addiction to smoking cigarettes manufactured and marketed by RJR.  After Price died, the Estate maintained the suit as a wrongful death action.  The Estate alleged causes of action for strict liability, negligence, fraudulent concealment, and conspiracy to commit fraudulent concealment.

Price began smoking when he was 12 years old.  By the time he was 16, Price was smoking a pack a day.  Price smoked two to three packs of cigarettes a day for most of his adult life.  He did not quit smoking until he was 58, when he was diagnosed with COPD.  He died 16 years later, at the age of 74.

As with other *Engle*-progeny cases, the Estate presented evidence that major tobacco companies in the United States, including RJR, made fraudulent statements about the hazards of smoking as early as December 4, 1953.  Over a fifty-year period, the tobacco companies concealed information about the addictive nature of nicotine and the harmful effects of smoking while engaging in marketing efforts to encourage people to smoke.

The jury returned a verdict for the Estate on the negligence and strict liability counts.  And while the jury found that the major tobacco companies conspired to conceal health information or information about addiction, the jury did not find that RJR's concealment or omission of material information about the health

---

[2] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

effects and addictive nature of smoking cigarettes was a legal cause of Price's death.

The jury awarded $6.4 million dollars in compensatory damages, apportioning 60% of the fault for the legal cause of Price's death to Price and 40% to RJR. The jury found that punitive damages were warranted but awarded none.

*Analysis*

We review the failure to give a proposed jury instruction for an abuse of discretion. *See R.J. Reynolds Tobacco Co. v. Jewett*, 106 So. 3d 465, 467 (Fla. 1st DCA 2012). A trial court abuses its discretion when it does not give a requested instruction that (1) accurately states the law, (2) is supported by the facts of the case, and (3) is necessary for the proper resolution of the issues by the jury—if the requested instruction is not covered by other instructions given to the jury and the failure to give the requested instruction is prejudicial. *Id.*

RJR argues that the trial court abused its discretion when it instructed the jury on the count of conspiracy to commit fraudulent concealment. RJR argued that for the Estate to prove its conspiracy claim, it would need to show that Price relied to his detriment on a specific statement that concealed or omitted material information about the health risks of smoking. During the charge conference, RJR requested the following instruction:

> The next issue for your determination is whether Mr. Price reasonably relied to his detriment on a statement that concealed or omitted material information regarding the health effects of smoking cigarettes or their addictive nature, and that was made in furtherance of Defendant's agreement to conceal health information or information regarding addiction and, if so, whether such reliance was a legal cause of Mr. Price's COPD and death. In order to be a legal cause of COPD and death, Plaintiff must show that Mr. Price relied on statements by Defendant or any of the other companies involved in the agreement that omitted material information concerning the health effect of cigarettes or their addictive nature or both made at any

3

time during or after December 1953. I hereby instruct you that Plaintiff has made no claim for conspiracy to conceal information regarding smoking and health or addiction before December 1953.

Reliance on a statement made in furtherance of an agreement to conceal is a legal cause of COPD and death if it directly and in natural and continuous sequence produces or contributes substantially to producing such COPD and death so that it can reasonably be said that, but for the reliance on the statement omitting the material fact, the COPD and death would not have occurred.

RJR argued that the proposed instruction was proper because conspiracy to commit fraudulent concealment requires proof of reliance on a false or misleading statement made by RJR.

The trial court declined to give the requested instruction and instead gave the following instruction that did not require the jury to find that Price relied on a specific statement:

The next issue for your determination is whether the conspiracy to withhold health information or information regarding addiction and any acts proven in furtherance of that conspiracy were relied upon by John Price to his detriment and were a legal cause of John Price's death.

In regard to this civil conspiracy finding I instruct you that R.J. Reynolds is responsible for every act committed by each of the co-conspirators taken in furtherance of the conspiracy. John Price's reliance to his detriment on a concealment or omission by any of the tobacco companies or tobacco industry groups involved in the conspiracy is a legal cause of John Price's death if it directly and in a natural and continuous sequence produced or contributed substantially to producing his death so that it can reasonably be said that but for John Price's reliance his death would not have occurred.

4

Based on this Court's recent decision in *R.J. Reynolds v. Whitmire*, 260 So. 3d 536 (Fla. 1st DCA 2018),[3] this was error.

In *Whitmire*, RJR argued on appeal that the trial court erred when it denied RJR's motion for directed verdict because the *Engle* plaintiff in that case failed to allege that he detrimentally relied on a fraudulent statement by RJR. This Court acknowledged that "the Engle findings generally establish that [RJR] made misleading statements and concealed material information." *Id.* at 540. But we agreed with RJR's argument about individual reliance on specific statements and held that to support a claim for fraudulent concealment, an *Engle* plaintiff must "prove that they relied to their detriment on false statements from the tobacco companies." *Id.* at 539.

Here, no other jury instruction informed the jury of the need to find that Price detrimentally relied on a false or misleading statement by RJR. RJR's proposed instruction was a correct statement of the law supported by the facts of the case and necessary for the jury to resolve properly the issues. *Jewett*, 106 So. 3d at 467. The failure to give the requested instruction was prejudicial because the jury might have reasonably been misled by the instruction that was given. *See Fla. Power & Light Co. v. McCollum*, 140 So. 2d 569, 569 (Fla. 1962) (concluding that the proper "inquiry is whether the jury might reasonably have been misled" and concluding that such constitutes a miscarriage of

---

[3] Despite statements to the contrary in the dissent, our decision in *Whitmire* does not conflict with our earlier decision in *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060 (Fla. 1st DCA 2010). *Martin* established that reliance can be proven by circumstantial evidence. *Whitmire*, 260 So. 3d at 540. But as we explained in great detail in *Whitmire, Martin* should not be read to circumvent earlier decisions from the Florida Supreme Court holding that "plaintiffs must prove such reliance based on some evidence to support the inference and the supreme court's holdings on the merit of circumstantial evidence to support liability." *Id.* at 540; *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687 (Fla. 2015) ("The plaintiff 'must certainly prove detrimental reliance' to prevail on a claim of fraudulent concealment.").

justice under the civil harmless error statute in effect then); *Veliz v. Am. Hosp., Inc.*, 414 So. 2d 226, 228 (Fla. 3d DCA 1982) ("An instruction which tends to confuse rather than enlighten the jury is cause for reversal if it may have misled the jury and caused them to arrive at a conclusion that otherwise they may not have reached."). Thus, reversal is required.

## *Disposition*

Having reversed the judgment on the conspiracy count, we must consider the appropriate scope of remand. In the concluding sentence of the Initial Brief, RJR asks this Court to "order a new trial or, in the alternative, reduce the judgment by Mr. Price's share of comparative fault."[4] *See* Fla. R. App. P. 9.210(b) (requiring that an initial brief contain "a conclusion, of not more than 1 page, setting forth the precise relief sought"). We begin by observing the discretion vested in an appellate court to direct a new trial on one or more issues. *See Tracey v. Wells Fargo Bank, N.A.*, 264 So. 3d 1152 (Fla. 2d DCA 2019) (discussing the principles governing an appellate court's authority when reversing a trial court judgment). Section 59.35, Florida Statutes (2017), provides:

> An appellate court may, in reversing a judgment of a lower court brought before it for review by appeal, by the order of reversal, if the error for which reversal is sought is such as to require a new trial, direct that a new trial be

---

[4] RJR thus did not limit its prayer for relief to requesting a reduction in the compensatory damages award to account for comparative fault. Rather, its prayer for relief in the alternative was linked to RJR's fifth claim of error—that the trial court should have applied the comparative-fault statute even though the Estate prevailed on its conspiracy claim. RJR asserts that the comparative-fault statute applies to all *Engle*-progeny cases "regardless of whether or not the plaintiff prevails on individual claims of concealment or conspiracy." Thus, the alternative prayer for relief pertained only to RJR's fifth claim. In its fourth claim of error regarding the jury instruction on the conspiracy claim, RJR does not so limit its prayer for relief.

had on all the issues shown by the record or upon a part of such issues only.

Thus, remand directions are within the discretion of the appellate court. *Tracey*, 264 So. 3d at 1161 ("Remand directions . . . seem always to turn upon some basic postulate of fairness, which is, in turn, an exercise of a court's discretion."); *see also Yates v. St. Johns Beach Dev. Co.*, 165 So. 384, 385 (Fla. 1935) ("It is a long-standing legal principle that appellate courts have broad powers to "make such disposition of the case as justice requires.").

But that discretion is not without limits. *Id.* For example, after granting a new trial on one issue, an appellate court must order retrial of other issues when the issues are "inextricably intertwined." *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931). This is so because if the trial court "were to retry only one of two such intertwined issues to a second jury, while maintaining the vitality of the first jury's findings on the other issue, it would cause confusion and uncertainty and, thus, an unfair trial." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1255-56 (10th Cir. 1999). Courts have found issues of liability and damages to be inextricably intertwined when a trial on damages alone would require the jury to consider the same evidence as a trial on both liability and damages. *See Lawson v. Swim*, 258 So. 2d 458, 459 (Fla. 1st DCA 1972) (after reversing on damages, directing new trial on damages and liability "because the evidence as to both issues is so inextricably interlaced that the new jury should be allowed to consider and determine both issues"); *Equitable Life Assurance Soc'y of U.S. v. Fairbanks*, 400 So. 2d 550, 553 (Fla. 4th DCA 1981). Courts have also found issues of liability and comparative fault to be inextricably intertwined. *See, e.g., Lenhart v. Basora*, 100 So. 3d 1177 (Fla. 4th DCA 2012) ("To parse out the comparative negligence of the parties, the trier of fact must hear the 'totality of fault' of each side."); *Currie v. Palm Beach Cty.*, 578 So. 2d 760, 764 (Fla. 4th DCA 1991) ("One of the issues tried to the jury was whether [plaintiff] was comparatively negligent. Evidence on this issue necessarily impacts both liability and damages.").

Here, the jury found for Price on her claims for negligence and conspiracy, but not on her claim for fraudulent concealment. The

jury awarded compensatory damages and apportioned fault between Price and RJR. And in a separate phase, the jury declined to award punitive damages against RJR. Based on our review of the record, particularly the instructions read to the jury and the verdict form, we conclude that the issues of negligence, conspiracy, comparative fault, compensatory damages, and punitive damages are inextricably intertwined and must be retried.[5]

The following instructions were given to the jury: First, the jury was instructed to determine whether Price was a member of the *Engle* class. To do this, the jury had to find that Price was addicted to cigarettes containing nicotine, and that addiction was a legal cause of his COPD. Then, if the jury found that Price was a member of the *Engle* class, it next had to consider two theories of strict liability.

First, the jury had to decide whether RJR's concealment or omission of material information about the health risks and addictive nature of cigarette smoking was relied on by Price to his detriment and was the legal cause of his death. Second, the jury had to determine that RJR conspired with other tobacco companies to withhold health information or information about addiction and that any acts proven in furtherance of that conspiracy were relied on by Price to his detriment and were a legal cause of his death.

If the jury found that the greater weight of the evidence supported one or more of Price's claims, then it had to assign a percentage of fault to Price for his death. This determination was to be followed by a finding on the amount of damages suffered by

---

[5] We do not disturb the jury's verdict for RJR on the fraudulent concealment count. The Estate did not cross-appeal the judgment entered on the fraudulent concealment claim. *See Webb Gen. Contracting, Inc. v. PDM Hydrostorage, Inc.,* 397 So. 2d 1058, 1059-60 (Fla. 3d DCA 1981) ("The function of a cross-appeal is to call into question error in the judgment appealed, which, although substantially favorable to the appellee, does not completely accord the relief to which the appellee believes itself entitled.")

Price's wife as a result of his death, including any damages that she was reasonably certain to suffer in the future. Finally, the jury was asked to determine whether punitive damages were warranted as a punishment to RJR and as a deterrent to others.

The verdict form mirrored the instructions given to the jury. The jury was asked if Price was a member of the *Engle* class. If it answered affirmatively, the jury had to determine whether RJR's concealment or omission of information was the legal cause of Price's death and whether RJR's involvement in the conspiracy to conceal or omit information was a legal cause of Price's death. Next, the jury allocated fault between Price and RJR and decided the total amount of damages suffered by Price's wife. Finally, the jury had to determine whether clear and convincing evidence showed that punitive damages were warranted against RJR.

Thus, the verdict on comparative fault reflected the jury's finding that RJR was liable for the claims of negligence and conspiracy. The jury was not instructed to and did not separate out the amount of fault assigned to each claim. This also holds true for the jury's award of damages.[6] On remand, a second jury could find that RJR did not conspire to conceal fraudulent information. In that event, it is unclear how the second jury could apportion fault between RJR and Price without reconsidering the findings of the first jury on the negligence claim. Because the issues here are inextricably intertwined, we reverse and remand

---

[6] Despite the Estate's assertion, a new trial on multiple issues is not prohibited by the two-issue rule. This is because RJR timely objected to the use of the general verdict form approved by the trial court and submitted a special verdict form including a correct statement of the conspiracy claim. *Whitman v. Castlewood Int'l Corp.*, 383 So. 2d 618, 619 (Fla. 1980) ("[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced"); *see also Liggett Group, Inc. v. Davis*, 973 So. 2d 467, 473 (Fla. 4th DCA 2007) (declining to apply the two-issue rule where "a general verdict form was submitted, without objection").

for a new trial on the negligence and conspiracy claims, and on compensatory damages, comparative fault, and punitive damages.

REVERSE and REMAND for a new trial.

B.L. THOMAS, J., concurs; MAKAR, J., dissents with opinion.

————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

————————————

MAKAR, J., dissenting.

In this tobacco tort case, the jury ruled in favor of the deceased's estate on three different claims: that R.J. Reynolds (RJR) acted negligently, that RJR was strictly liable for the harm to the deceased, and that RJR engaged in a conspiracy to conceal material information about the dangers of smoking. It awarded $6.4 million in compensatory damages but no punitive damages despite determining they were warranted.

As to the conspiracy claim, RJR argues on appeal that the jury was not properly instructed on the element of *reliance*, the same argument it made in *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010) ("RJR also argues that Mrs. Martin failed to prove the reliance element of her fraudulent concealment claim because she put on no direct evidence showing Mr. Martin relied on information put out by the tobacco companies omitting scientific findings on the harmful effects of smoking."). This Court in *Martin* rejected RJR's argument, noting that:

> the record contains abundant evidence from which the jury could infer Mr. Martin's reliance on pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health.

10

*Id.* This case is identical to and governed by *Martin*. As in *Martin*, John Charles Price, the now-deceased smoker in this litigation, was aware of the pervasive misleading advertising campaign, which affected his smoking decisions. When asked how RJR's ads injured him, he testified they presented the "Marlboro Man" as if to "make everything look hunky-dory" and "Joe Camel" and the "Old Gold Dancers" who "made [smoking] look like the thing to do, the in crowd. You're in the in crowd." In other words, they made smoking attractive and cool, but concealed or failed to disclose its serious known health risks that would have made it unattractive, not so cool, . . . and fatal. Under *Martin,* the jury was entitled to infer that the misleading ads detrimentally affected Mr. Price's smoking behavior, thereby establishing reliance.

*Martin* applies notwithstanding the recent panel decision in *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 540 (Fla. 1st DCA 2018) (which was argued during the same session as this case). First of all, a panel by itself cannot overrule a district precedent. *In re Rule 9.331, Determination of Causes by a Dist. Court of Appeal En Banc, Fla. Rules of Appellate Procedure*, 416 So. 2d 1127, 1128 (Fla. 1982) [hereinafter *In re Rule 9.331*] (". . . the suggestion that each three-judge panel may rule indiscriminately without regard to previous decisions of the same court is totally inconsistent with the philosophy of a strong district court of appeal which possesses the responsibility to set the law within its district."). So, it can't be, in theory, that *Whitmire* overruled *Martin*.

Instead, the panel majority in *Whitmire* sought to distinguish *Martin*. It conceded *Martin*'s central premise, "that detrimental reliance on false statements can be proved through inference," 260 So. 3d at 540, but held nonetheless that a jury cannot infer reliance from the "abundant evidence" of a pervasive and misleading advertising campaign to which smokers nationwide were subjected based on "general evidence of the plaintiff's life and behavior," *Id.* It found in RJR's favor because the evidence in that case gave "*no indication* that the [decedent-smoker] relied on any false information disseminated by the tobacco companies." *Id.* at 540–41 (emphasis added). In contrast, Mr. Price's deposition testimony (read at trial) indicates that the pervasive tobacco advertisements

duped him into thinking smoking was the thing to do when the tobacco companies knew, but concealed, smoking's devastating health consequences, which is precisely the type of evidence that demonstrates detrimental reliance. *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 698 (Fla. 2015).[1]

Notably, this is not a case where a tobacco company was "silent" and failed to make actionable misleading statements that concealed information; instead, as in *Martin*, it involves the same "abundant evidence" of "pervasive misleading advertising campaigns" presented in tobacco tort cases by which reliance can be inferred. *Martin*, 53 So. 3d at 1069. In contrast to *Martin*, however, *Whitmire* appears to require proof that a plaintiff-smoker detrimentally relied on a specific false *statement* to prevail on a fraudulent concealment theory versus proof of detrimental reliance on inaccurate representations *that withheld or concealed material information.* On this point, *Martin* and *Whitmire*—like dysfunctional family members—appear to be hopelessly in conflict; and *Whitmire* is an outlier statewide on whether reliance on a specific statement is required. *See Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1108 (11th Cir. 2018) (surveying Florida appellate cases and concluding that "Florida courts have consistently held that *Engle*-progeny plaintiffs are not required to show reliance on a specific statement."). Our court either ought to renounce *Martin* and adopt *Whitmire* (or vice versa), certify conflict with other districts with whom we disagree, or certify a

---

[1] The only issue in *Hess* was whether proof of detrimental reliance is required during the repose period. The deceased smoker "believed and trusted the cigarette companies" and was "taken in by [their] advertisements," but did so outside the repose period. *Hess*, 175 So. 3d at 690. The supreme court held "that for statute of repose purposes it is not necessary that the smoker relied during the twelve-year repose period" and that "evidence of the defendant's wrongful conduct within the repose period" is sufficient. *Id.* at 698. To avoid potential confusion, the court reiterated that "*Engle*-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment claims," but that such proof may be outside the repose period, thereby breaking no new ground as to *how* detrimental reliance can be proven. *Id.*

12

question of great public importance. Disharmonious precedents serve only to undermine the stability and uniformity of our laws. *In re Rule 9.331,* 416 So. 2d at 1128 ("... if intra-district conflict is not resolved within the district courts by en banc decision, totally inconsistent decisions could be left standing and litigants left in doubt as to the state of law.").

Next, RJR—even if it was entitled to the jury instruction it sought on its conspiracy claim—would be entitled to a new trial *on that claim only*. It would not be entitled to a new trial on the negligence and strict liability claims, which are each a separate and independent basis for liability against RJR. Common sense tells us that a tortfeasor who injures another person by negligence (or strict liability)—as in this case—can be held liable for those acts regardless of whether the tortfeasor's conspiracy to injure that person succeeded or failed. Imagine if Alice negligently knocked Humpty Dumpty off the wall, but hadn't conspired (or failed to conspire) with anyone to hurt him. Why would a jury verdict and a damage award for Mr. Dumpty on his negligence count against Alice be in doubt? Whether or not Alice conspired to hurt Mr. Dumpty doesn't affect the fact that Alice negligently injured him. A retrial of the conspiracy claim against RJR would have no effect on, and provide no basis for negating, the negligence and strict liability claims against RJR for which the jury found liability and damages (the latter would be the same with or without a conspiracy).

Moreover, RJR *didn't even ask* for the scope of relief granted on appeal.[2] It sought a new trial as to the conspiracy claim, but it made no argument that a new trial on all three counts was necessitated because of the claimed conspiracy instruction error (it sought, at a minimum, an adjustment to the monetary judgment on the other counts "to account for comparative fault" percentages the jury agreed upon). It cited no case for the proposition that it

---

[2] RJR only sought a new trial as to all claims based on its three evidence-based appellate arguments (exclusion of its expert's testimony, exclusion of portions of Mr. Price's testimony, and admission of "hypothetical patient" testimony, none of which are the basis for relief in this appeal.)

gets a retrial on the negligence and strict liability counts for the claimed conspiracy instruction omission, and none exist.[3] Tellingly, RJR said *nothing* in response to the estate's point that the "jury's verdict on the negligence and strict-liability counts are not implicated at all by the conspiracy instruction. No matter what, then, these counts still stand." Ans. Br. at 55. For all these reasons, a retrial on all claims should not be granted on appeal where no legal argument or briefing by RJR was made in this Court seeking such relief.

––––––––––––––––––

Jeffrey A. Yarbrough, Robert B. Parrish, and David C. Reeves, of Moseley, Prichard, Parrish, Knight & Jones, Jacksonville; Jason T. Burnette, Charles R.A. Morse, Stephanie E. Parker and John M. Walker of Jones Day, New York, NY; Tony A. Fuhrman and Marie A. Borland of Hill, Ward & Henderson, Tampa, for Appellant/Cross-Appellee.

Celene H. Humphries, Maegen Peek Luka, and Thomas J. Seider of Brannock & Humphries, Tampa; Gregory D. Prysock and Katherine M. Massa of Morgan & Morgan, P.A., Jacksonville; and Keith R. Mitnik of Morgan & Morgan, P.A., Orlando, for Appellee/Cross-Appellant.

––––––––––––––––––

[3] The Second District in *Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 445 (Fla. 2d DCA 2017), reversed and required a new trial as to all claims in that case, but not on the reliance issue; instead, relief was based solely on a matter *unrelated* to the substantive tort claims. *Id.* ("we reverse and remand for a new trial on all issues *based on the trial court's readback instruction*.") (emphasis added).

14