POLEN, J.
In this Engle[1]-progeny case, Philip Morris USA, Inc. (“PM USA”) and R.J. Reynolds Tobacco Company (“RJR”), appeal final judgments following jury verdicts, awarding Robin Cohen, as personal representative of the estate of her late-husband Nathan Cohen, $10 million in non-economic compensatory damages and $10 million in punitive damages, from each appellant. The jury found each party one-third responsible for Nathan’s death. Based on that apportionment, and after denying appellants’ motions for judgment as a matter of law, new trial, and remittitur, the trial court entered final judgment against each appellant for $13,338,338.
In this appeal, appellants contend that (1) the use of the Engle findings to establish elements of appellee’s claims violates Florida law and due process; (2) appellee failed to prove legal causation (that a specific defect or tortious act or omission injured Nathan) and the trial court’s instruction on causation was erroneous; (3) the trial court erroneously instructed the jury on appellee’s fraudulent concealment claim; (4) the trial court abused its discretion in denying appellants’ motions for re-mittitur because the non-economic compensatory damage awards are excessive; and (5) the punitive damage awards are excessive and violate due process.
We summarily reject appellants’ first two contentions of error based on our opinion in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707, 717 (Fla. 4th DCA 2011). For the reasons set forth below, we affirm the compensatory damages award but reverse the punitive damages award because the trial court erred by not instructing the jury on the statute of repose in conjunction with appellee’s fraudulent concealment claim — the only basis for the punitive damages award.[2] We approve of the amount of punitive damages awarded by the jury; therefore, the only issue to be decided on remand is appellee’s entitlement to the award, which will be resolved when the jury determines whether Nathan reasonably relied on statements or omissions made by appellants within the applicable statute of repose period.
This case proceeded to trial in two phases, as approved by this court in Brown. See Brown, 70 So.3d at 714. After phase I, the jury determined that Nathan was an Engle class member (ie., he had been addicted to cigarettes containing nicotine and the addiction was a legal cause of his COPD and lung cancer).
In phase II, the jury determined the issues of legal causation, comparative fault, compensatory damages, and punitive damages. Robin testified that Nathan believed the tobacco industry’s reassurances about their products: “He believed that a *15 large company would not do anything to hurt the people,” and continued to smoke “because there was never any proof that it wasn’t okay.” She testified that sometime around “the mid '80s,” Nathan became aware of the detrimental health effects of smoking cigarettes. He tried to quit (cold turkey, hypnosis, and classes) but was unsuccessful. Nathan was diagnosed with COPD, and then with small cell lung cancer in 1994.
At the conclusion of phase II, the trial court instructed the jury that because Nathan was an Engle class member, it was bound by the following Engle findings: Appellants were negligent; sold defective cigarettes; concealed material information; and agreed to conceal such information. Appellants requested the following jury instruction:
In determining whether Nathan Cohen reasonably relied to his detriment on a statement by a defendant that omitted material information, you may not consider evidence of alleged statements, concealment or other conduct that occurred before May 5,1982.
The trial court denied the request. This was error.
The failure to give a requested instruction constitutes reversible error when the complaining party establishes that the requested jury instruction accurately states the applicable law, the facts in the case support giving the instruction, and the instruction was necessary to allow the jury to properly resolve all issues in the case.
Smith v. Hugo, 714 So.2d 467, 468 (Fla. 4th DCA 1998) (citation omitted).
“[A] claim of fraudulent misrepresentation and/or concealment requires proof of detrimental reliance on a material misrepresentation.” Soler v. Secondary Holdings, Inc., 771 So.2d 62, 69 (Fla. 3d DCA 2000) (citing Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985)). Florida’s statute of repose requires that any action “founded upon fraud” be filed within twelve years “after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.” § 95.031(2)(a), Fla. Stat. (2007). The Engle case was filed on May 5, 1994; therefore, appellee’s fraudulent concealment claim had to be based on conduct that occurred after May 5, 1982 — she must prove that Nathan relied upon statements or omissions by appellants made after that date. The jury should have been instructed accordingly.[3]
Limiting the new trial to the issue of Robin’s entitlement to the punitive damage awards will not be confusing or prejudicial. See Purvis v. Inter-County Tel. & Tel. Co., 173 So.2d 679, 681 (Fla.1965) (“The trial court can by proper instructions to the jury and supervision of the trial process avoid any inferences or implications to be drawn from the previous award of damages ... avoiding prejudice to [defendant]”); Griefer v. DiPietro, 625 So.2d 1226, 1229 (Fla. 4th DCA 1993) (reversal for new trial on liability only is appropriate “where the error complained of affects only the issues of liability”).
*16 Although we reverse and remand the punitive damage awards for a determination of entitlement based on the statute of repose, we approve of the amounts awarded by the jury and do not find the awards excessive.'
“The purpose of punitive damages is ‘not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future.’” R.J. Reynolds Tobacco Co. v. Townsend, 90 So.Sd 307, 312 (Fla. 1st DCA 2012) (quoting Owens-Corning Fiberglas Corp. v. Ballard, 749 So.2d 483, 486 (Fla.1999)). In BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Supreme Court identified “three guideposts” for assessing the reasonableness of punitive damages: (1) the degree of reprehensibility of the defendant’s conduct; (2) the ratio between the punitive and compensatory damages; and (3) civil and criminal penalties for similar conduct. Townsend, 90 So.3d at 313 (citing Gore, 517 U.S. at 574-85, 116 S.Ct. 1589).
[T]he three criteria a punitive damage award must satisfy under Florida law to pass constitutional muster are: (1) “the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct”; (2) the award “bears some relationship to the defendant’s ability to pay and does not result in economic castigation or bankruptcy to the defendant”; and (3) a reasonable relationship exists between the compensatory and punitive amounts awarded.
Id. (quoting R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1072 (Fla. 1st DCA 2010)) (quoting Engle, 945 So.2d at 1263-64).
We hold that the $10 million punitive damages awards in this case are not “out of all reasonable proportion”[4] and will not cause appellants’ financial ruin.[5] “As to the third criterion, the typical measure used to determine whether a ‘reasonable relationship’ exists between the punitive and compensatory damages is the ratio of the awards.” Id. at 314 (citing Gore, 517 U.S. at 580, 116 S.Ct. 1589; Martin, 53 So.3d at 1071-72). “Although there is no bright-line standard, the Florida Supreme Court observed in Engle that ‘[s]ingle-digit [ratios] are more likely to comport with due process, while still achieving the State’s goals of deterrence and retribution.’ ” Id. (quoting Engle, 945 So.2d at 1264-65) (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)).
In Townsend, “the ratio between the punitive damage award ($40.8 million) and the pre-apportionment compensatory damage award ($10.8 million) [was] 3.7 to 1, which [was] less than the 5 to 1 pre-apportionment ratio [] upheld in Martin.” Id. Nevertheless, the First District held *17 that the $40.8 million punitive damage award in Townsend was “constitutionally excessive in view of the substantial $10.8 million compensatory damages award.” Id.
Here, the $10.8 million compensatory damage award — which is substantial by any measure — -justifies a lower ratio than 8.7 to 1. Although we find the $40.8 punitive damage award excessive under the Gore and State Farm criteria, a 1 to 1 ratio is unwarranted, however, because the evidence of the extreme reprehensibility and wantonness of RJR’s conduct was substantial. See Gore, 517 U.S. at 575, 116 S.Ct. 1589 (noting that “the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant’s conduct”).
Id. at 315-16.
“The Supreme Court has been ‘reluctant to identify concrete constitutional limits on the ratio between harm ... to the plaintiff and the punitive damages award[.]’ ” Id. at 315 (quoting State Farm, 538 U.S. at 424, 123 S.Ct. 1513). The Court has cautioned that “[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.” State Farm, 538 U.S. at 425, 123 S.Ct. 1513. However, “[t]he precise award in any case, of course, must be based upon the facts and circumstances of the defendant’s conduct and the harm to the plaintiff.” Id.
Although the $10 million compensatory damage awards in this case are indeed substantial, the ratio between the punitive awards and the compensatory awards is 1:1. Under both federal and Florida due process requirements, the punitive damages are not excessive.
We also reject appellants’ argument that the use of the Engle findings violated due process because it subjected them to punishment for non-party harms.
[T]he Constitution’s Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, ie., injury that it inflicts upon those who are, essentially, strangers to the litigation.
Philip Morris USA v. Williams, 549 U.S. 346, 353, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007). However,
conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility. [6]
Id. at 357, 127 S.Ct. 1057. The Court further explained:
Given the risks of unfairness that we have mentioned, it is constitutionally important for a court to provide assurance *18 that the jury will ask the right question, not the wrong one.... We therefore conclude that the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, ie., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers.
Id. at 355,127 S.Ct. 1057.
Here, the trial court protected against the risk; at appellants’ request, the trial court instructed the jury as follows:
In determining whether punitive damages are warranted, and if so, in determining the amount of any such damages, you may not seek to punish a defendant for any harms suffered by any persons other than Nathan Cohen.
This instruction is consistent with Williams. See Townsend, 90 So.3d at 313 n. 7 (quoting Williams and State Farm, Mut. Auto. Ins. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), and holding that “[t]he jury here was instructed on the permissible uses of evidence of harm to nonparties.”).
Finally, we reject appellants’ argument that the trial court abused its discretion in denying their motions for re-mittitur because the $10 million non-economic compensatory damage awards are excessive. This court reviews a trial court’s order denying a motion for remitti-tur for abuse of discretion. City of Hollywood v. Hogan, 986 So.2d 634, 647 (Fla. 4th DCA 2008). Florida law requires that “awards of damages be subject to close scrutiny by the courts and that all such awards be adequate and not excessive.” § 768.74(3), Fla. Stat. (2010).
“Under Florida law an award of non-economic damages must ‘bear a reasonable relation to the philosophy and general trend of prior decisions in such cases.’ ” Bravo v. United States, 532 F.3d 1154, 1162 (11th Cir.2008) (quoting Gresham v. Courson, 177 So.2d 33, 39-40 (Fla. 1st DCA 1965)).
Where recovery is sought for a personal tort, or where punitive damages are allowed, we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation. In tort cases damages are to be measured by the jury’s discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
Aills v. Boemi, 41 So.3d 1022, 1027-28 (Fla. 2d DCA 2010) (quoting Bould v. Touchette, 349 So.2d 1181, 1184-85 (Fla.1977)).
“The fact that a damage award is large does not in itself render it excessive nor does it indicate that the jury was motivated by improper consideration in arriving at the award.” Townsend, 90 So.3d at 311 (quoting Allred v. Chittenden Pool Supply, Inc., 298 So.2d 361, 365 (Fla.1974)). “[T]he amount of damages rests solely within the jury’s sound discretion, and the jury’s decision must be given great credence.” Tobias v. Osorio, 681 So.2d 905, 907 (Fla. 4th DCA 1996). “Who can place a dollar value on a human life, measured by the loss and grief of a loved one? That difficult decision is generally one for the jury or fact finder, not the appellate court.” Citrus Cnty. v. McQuillin, 840 So.2d 343, 347-48 (Fla. 5th DCA 2003).
In Townsend, the First District affirmed a $10.8 million compensatory damages award (before reduction for comparative fault) consisting of only non-economic damages suffered by the plaintiff/appellee as a result of the death of her husband:
*19 Although the $10.8 million compensatory damage award in this case is higher than the non-economic damage awards affirmed by this Court in the other Engle progeny cases that we have reviewed to date, we cannot say that the award obviously exceeds the “reasonable range within which the jury may properly operate.” Bould, 849 So.2d at 1185. The highest post Engle compensatory damages awards that have passed appellate muster thus far are the $7.8 million award in Liggett Group [v. Campbell ], 60 So.3d [1078] at 1078 [ (Fla. 1st DCA 2011) ], and the $5 million award in Martin, 53 So.3d at 1066. We are persuaded from our review of the record that a proper evidentiary basis existed to justify the award and that, despite its size, it was not based merely on passion or prejudice.
90 So.3d at 311-12 (footnotes omitted).
As in Townsend, the jury in this case observed appellee testify and heard her first-hand account of her life with Nathan. Robin met Nathan in 1955; they married in 1957. The couple adopted two children, and Robin stopped working full-time to become a housewife. Although the couple divorced, they continued to see each other every day, and within two years, they remarried. Following their remarriage, they were “constant companions.”
The jury also heard testimony of what the couple’s life was like after Nathan’s diagnoses. While caring for Nathan, Robin tore both of her rotator cuffs. Although the injuries were painful — she needed surgery — she testified that the emotional injury was worse than the physical pain. Eventually, Nathan stopped undergoing chemotherapy so as to maximize his remaining time with Robin. Nathan died at age 68; Robin was 66. Following Nathan’s death, Robin explained that she has “had to grow old alone.”
The evidence presented to the jury regarding Robin’s pain and suffering is nearly identical to the evidence relied upon by the First District in Townsend. In this case, sixteen years had passed between Nathan’s death and the trial. The jury heard testimony from appellee and her daughters that during this time, Robin has not remarried, and instead, has “had to grow old alone.”
With this evidence, the jury was entrusted with the “difficult decision” of effectively placing a dollar value on Mr. Townsend to Appellee. See McQuillin, 840 So.2d at 348. Although the $10.8 million awarded by the jury is certainly at the outer limit of reasonableness for a case such as this, the award is not so inordinately large that it shocks our collective judicial conscience.... Accordingly, we find no abuse of discretion in the trial court’s refusal to second-guess the jury’s award of compensatory damages.
Id. at 312. We decline to disturb the $10 million compensatory awards.

Affirmed in part; Reversed and Remanded in part.

GROSS and LEVINE, JJ., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. While we reverse on this issue because the trial court failed to instruct the jury on the statute of repose, we reject appellants’ argument that appellee failed to prove reliance. See R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1069 (Fla. 1st DCA 2010) (“[T]he record contains abundant evidence from which the jury could infer Mr. Martin's reliance on pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health.”).

. Appellee’s response that appellants' proposed instruction was a misstatement of the law, and reliance on Laschke v. Brown & Williamson, 766 So.2d 1076 (Fla. 2d DCA 2000), is mistaken. Laschke held that ‘‘[i]n claims alleging conspiracy, the critical date for statute of repose purposes should be the date of the last act done in furtherance of the conspiracy.” Id. at 1079 (emphasis added). Here, appellants’ requested a jury instruction as it related to the fraudulent concealment claim, not the accompanying conspiracy claim.

. The record in this case, like the record in Martin and Townsend is
replete with evidence of the decades-long, wanton and intentional conduct by RJR in vigorously, persuasively marketing to the public (including young people) a product the company knew was addictive; willfully concealing the serious health hazards posed by cigarette smoking; affirmatively deceiving the public into believing that cigarettes may not be harmful; and refusing to remove certain ingredients in cigarettes (such as nicotine) that the company counted on to sustain sales.
Townsend, 90 So.3d at 313 (citing Martin, 53 So.3d at 1070-72). As in Martin and Townsend, a proper evidentiary basis exists for imposition of such an amount as to each appellant.

. In this appeal, appellants do not argue that the awards will cause them financial ruin.

. The Williams Court explained:
Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible — although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on non-parties.
Id. at 355, 127 S.Ct. 1057.