# Supreme Court of Florida

_____

No. SC12-1401
_____

**PHILIP MORRIS USA, INC., et al.,**
Petitioners,

vs.

**TINA RUSSO, etc.,**
Respondent.

[April 2, 2015]

QUINCE, J.

Philip Morris USA, Inc. ("PM USA") and R.J. Reynolds Tobacco Company

("R.J. Reynolds"), seek review of the decision of the Third District Court of

Appeal in Frazier v. Philip Morris USA Inc., 89 So. 3d 937 (Fla. 3d DCA 2012),[1]

on the ground that it expressly and directly conflicts with the decisions of the

Fourth District Court of Appeal in Philip Morris USA, Inc. v. Hess, 95 So. 3d 254

(Fla. 4th DCA 2012), quashed, No. SC12-2153 (Fla. Apr. 2, 2015), Philip Morris

USA, Inc. v. Naugle, 126 So. 3d 1155 (Fla. 4th DCA 2012), opinion withdrawn,

_____

1. Phyllis Frazier passed away before the Third District issued its decision.
Tina Russo, Ms. Frazier's daughter, was substituted as the Respondent as executor
de son tort for Ms. Frazier's estate.

and superseded on reh'g, Philip Morris USA, Inc. v. Naugle, 103 So. 3d 944 (Fla. 4th DCA 2012), review denied, 135 So. 3d 289 (Fla. 2014), and Philip Morris USA Inc. v. Cohen, 102 So. 3d 11 (Fla. 4th DCA 2012), and with this Court's decision in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), on questions of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we approve the Third District's decision in Frazier to the extent of its conclusion pertaining to the statute of repose and disapprove Naugle and Cohen.

## FACTS AND PROCEDURAL HISTORY

In December 2007, Ms. Frazier filed a complaint against PM USA and R.J. Reynolds in the Eleventh Judicial Circuit in and for Miami-Dade County, alleging that her smoking of the defendants' cigarettes proximately caused her to develop chronic obstructive pulmonary disease (COPD).[2] Ms. Frazier brought claims of strict liability-defective design, negligent design, fraud by concealment, and civil conspiracy-fraud by concealment. Punitive damages were sought in her fraud by concealment and civil conspiracy-fraud by concealment claims. The defendants each raised statutes of limitations and statutes of repose defenses in their answers.

The testimony offered at trial included that Ms. Frazier started smoking in 1945, when she was fourteen or fifteen years old. Ms. Frazier smoked Winston

---

2. Ms. Frazier also named Liggett Group, LLC and Vector Group LTD., Inc., as defendants. Pursuant to a joint stipulation, the trial court later dismissed the claims against Liggett Group, LLC and Vector Group LTD., Inc.

- 2 -

cigarettes but switched to the Carlton brand of cigarettes because it advertised that it had the lowest tar and nicotine in its cigarettes. Ms. Frazier then switched to Parliaments because that brand advertised "the recessed filter" in its cigarettes, which she thought was better for her. In relying on advertising and believing that it was better for her, Ms. Frazier made a final switch to Benson & Hedges Ultra Lights. Ms. Frazier testified that the advertisements were "influential," and that the "tobacco company" did not tell her that it was hazardous, which she relied on. Ms. Frazier stated that the correctness of the warning displayed on the cigarette packages was "controversial" because "there wasn't any definite information."

Ms. Frazier admitted that she was aware that cigarettes were addictive in 1963, and by the mid-1970s, she was aware that smoking could cause lung cancer, COPD, and emphysema. In 1991, Ms. Frazier was informed that she had an asthma attack. In that same year, Ms. Frazier's pulmonologist's impression was that she suffered from tobacco addiction with underlying COPD. In 1992, Ms. Frazier quit smoking. The pulmonologist testified that Ms. Frazier's first "real" documented COPD was in 1993, when Ms. Frazier was told that she had COPD and emphysema. According to her physician, Ms. Frazier's cigarette smoking was the cause of her disease. Ms. Frazier underwent a lung transplant in 2003.

Ms. Frazier presented the following testimony relating to the conduct on the part of the tobacco companies. In 1953, when the studies first linked cigarettes and

cancer, the tobacco companies hired scientists who confirmed that cancer rose dramatically as people smoked more cigarettes. In response to public concerns, the tobacco companies issued "A Frank Statement," wherein claims were made about the safety of cigarette smoking which were reinforced by advertisements and public interviews given by tobacco executives. The companies' publicly made claims were contradicted by their internal research. As early as 1961, the tobacco companies' internal documents reflected the ineffectiveness of filters in removing cancerous components. Tobacco companies knew nicotine was addicting and that smoking causes lung cancer and emphysema.

Ms. Frazier also offered testimony that the head of research at PM USA said in a 1976 interview that the company is "sincere" in its belief that cigarettes are not harmful. The head of the Tobacco Institute testified during a 1978 Congressional subcommittee meeting that smoking is not causing deaths and that science does not know if smoking causes death. A Tobacco Institute spokesperson stated in 1983 that "I don't think that there has been a causal relationship established between cigarette smoking and any other disease." In 1984, R.J. Reynolds took out advertisements in major newspapers and magazines calling for an open debate regarding smoking's danger, which would show that smoking does not cause cancer. A tobacco spokesperson stated in 1984 that "[i]t is not known whether cigarettes cause cancer." After the 1988 Surgeon General's report asserted that

nicotine was addicting, the Tobacco Institute released a statement that said "it has not been established that cigarette smoking produces a physical dependence to nicotine." In 1994, tobacco company executives testified under oath before Congress that nicotine was not addictive and that "it has not been proven that cigarette smoking causes cancer." In 1999, the tobacco companies admitted that smoking was harmful.

As to the fraudulent concealment and civil conspiracy of fraudulent concealment claims, the jury was instructed that the

> defendants concealed or omitted material information not otherwise known or available knowing that the material was false and misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both, and defendants agreed with each other, with other companies, or both to conceal or omit information concerning the health effects or the addictive nature of smoking cigarettes or both.

The defendants requested that the trial judge instruct the jury on section 95.031(2), Florida Statutes (1993), the twelve-year statute of repose governing fraud claims. The proposed language read as follows: "In making your determinations regarding Plaintiff's fraudulent concealment and agreement to conceal claims, you may not consider evidence of alleged concealment, statements,

or other conduct before [December 14, 1995/May 5, 1982]."[3]  The trial court denied the requested instruction on the fraud statute of repose.

The trial court also refused to allow the following question—proposed by the defendants—to appear on the verdict form which pertained to the fraudulent concealment claim:

> Please state as to each Defendant whether the Defendant, [after December 14, 1995] [after May 5, 1982], made a statement that concealed or omitted material information concerning the health effects and/or the addictive nature of smoking cigarettes and, if so, whether Ms. Frazier relied on the statement to her detriment such that, but for the statement, she would have acted differently and avoided her injuries.

Instead, the following question was submitted to the jury on the verdict form:

> Please state as to each Defendant whether Plaintiff relied to her detriment on a statement by that Defendant that concealed or omitted material information concerning the health effects and/or the addictive nature of smoking cigarettes and, if so, whether Plaintiff relied on the statement to her detriment such that, but for the statement, she would have acted differently and avoided her injuries.
>
> Philip Morris USA Inc.                          Yes____ No_____
>
> R.J. Reynolds Tobacco Company          Yes____ No_____

The verdict form question concerning the conspiracy claim provided as follows:

> Please state as to each Defendant whether Plaintiff relied to her detriment on a statement made in furtherance of that Defendant's agreement with others to conceal or omit material information

---

3.  December 14, 1995, and May 5, 1982, referred to the twelve years prior to the filing of Ms. Frazier's individual complaint and twelve years prior to the filing of the Engle class complaint, respectively.

regarding the health effects and/or addictive nature of smoking cigarettes and, if so, whether, but for the statement, she would have acted differently and avoided her injuries.

| | |
|---|---|
| Philip Morris USA Inc. | Yes____ No_____ |
| R.J. Reynolds Tobacco Company | Yes____ No_____ |

The jury found that Ms. Frazier was addicted to cigarettes containing nicotine and that her addiction was a legal cause of her COPD or emphysema. However, the jury determined that prior to May 5, 1990—which was four years prior to the filing of the Engle class complaint—Ms. Frazier knew or should have known in the exercise of reasonable care that she had been injured and that there was a causal connection between her smoking and her injury. Ms. Frazier's claims were thus barred by the applicable four-year statutes of limitations. As instructed, the jury did not decide the issues of causation, the fraudulent concealment and conspiracy claims, comparative fault, compensatory damages, and the entitlement to punitive damages.

Thereafter, Ms. Frazier moved for a directed verdict on the statutes of limitation defense and for a new trial, contending that the defendants failed to present any evidence that Ms. Frazier was on notice of a causal connection between her smoking and her development of COPD or emphysema on or before May 5, 1990. Her motions were denied, and accordingly, final judgment was entered in favor of the defendants.

Ms. Frazier appealed the trial court's denial of her motions for directed verdict and for a new trial. Frazier, 89 So. 3d at 939. Finding no competent record evidence that Ms. Frazier's claims accrued before the statute of limitations bar date, the Third District reversed and remanded for a new trial with instructions that the trial court grant her motion for a directed verdict on the statute of limitations issue. Id. at 939, 948.[4]

PM USA and R.J. Reynolds cross-appealed, asserting that Ms. Frazier's fraudulent concealment and conspiracy to conceal claims were barred by section 95.031(2), the fraud statute of repose, and that Ms. Frazier was required to prove that she relied upon a deceptive statement or omission after May 5, 1982. Id. at 947. In addressing this claim, the Third District held that "the last act done in furtherance of the alleged conspiracy fixes the pertinent date for purposes of commencement of the statute of repose, and we conclude that Ms. Frazier introduced evidence of deceptive statements or omissions occurring after May 5, 1982." Id. (citing Laschke v. Brown & Williamson Tobacco Corp., 766 So. 2d 1076, 1078 (Fla. 2d DCA 2000)). The district court rejected the defendants' argument that Ms. Frazier was "obligated to show further or continued reliance upon the alleged last act in furtherance of the conspiracy." Id. at 947-48.

---

4. The district court specifically found that manifestations of Ms. Frazier's COPD or emphysema did not begin until 1991. Id. at 948.

Therefore, the Third District found no error in the trial court's denial of the instruction on the fraud statute of repose. Id. at 948.[5] PM USA and R.J. Reynolds then sought review of the district court's decision in Frazier relating to their cross-appeal claims.[6]

**ANALYSIS**

Pursuant to the statute of repose contained in section 95.031(2), fraud claims "must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." § 95.031(2), Fla. Stat. PM USA and R.J. Reynolds contend that (1) the plain language of the statute requires proof of reliance on an act committed no more than twelve years before the complaint was filed, and (2) the trial court erred in denying their requested jury instruction on the statute. We disagree.

In Engle, 945 So. 2d 1246, we concluded that certain Phase I jury findings, including findings pertinent to fraudulent concealment[7] and civil conspiracy-

---

5. The district court also found no error in PM USA and R.J. Reynolds' additional claim raised in their cross-appeal regarding the trial court's granting of preclusive effect to certain Phase I Engle findings. Id.

6. In their initial brief on the merits, PM USA and R.J. Reynolds provided that they are not requesting the Court to address the preclusive effect of the Engle findings issue and that they have elected not to present the statute of limitations issue.

7. "[T]hat the [Engle] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or

- 9 -

concealment claims,[8] were entitled to res judicata effect in individual actions, provided that they were filed against the defendants within one year of our mandate. Id. In Hess v. Philip Morris USA, Inc., No. SC12-2153 (Fla. Apr. 2, 2015), we recently held that the statute of repose provided in section 95.031(2), did not bar a fraudulent concealment claim even though there was no evidence of the smoker's reliance within the repose period (May 5, 1982, through May 5, 1994). Hess, No. SC12-2153 at 2. We explained:

> Engle-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment claims. While we look to reliance in determining when an action accrued for the application of the fraud statute of limitations, the accrual of an action has no bearing on the fraud statute of repose. Because statutes of repose "run[] from the date of a discrete act on the part of the defendant," Kush [v. Lloyd], 616 So. 2d [415,] 418 [(Fla. 1992)], we hold that the defendant's last act or omission triggers Florida's fraud statute of repose. In other words, we find that "the date of the commission of the alleged fraud" under section 95.031(2), refers to the defendant's wrongful conduct. Thus, we conclude that for statute of repose purposes it is not necessary that the smoker relied during the twelve-year repose period. Where there is evidence of the defendant's wrongful conduct within the repose period, the statute of repose will not bar a plaintiff's fraudulent concealment claim.

> In its Phase I verdict form, the Engle jury found that the Engle defendants committed fraud by concealment based on conduct that occurred after May 5, 1982, i.e., during the statute of repose period.

---

misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both." Id. at 1277.

8. "[T]hat the [Engle] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment." Id.

- 10 -

Because we hold that the defendants' last act or omission triggers the fraud statute of repose and since the <u>Engle</u> jury found that the <u>Engle</u> defendants' fraudulent concealment conduct occurred within the repose period, we conclude that the <u>Engle</u> defendants are precluded as a matter of law from asserting the fraud statute of repose defense in <u>Engle</u>-progeny cases.

<u>Hess</u>, No. SC12-2153 at 22-23.

In the instant case, unlike in <u>Hess</u>, both fraudulent concealment and conspiracy to commit fraud by concealment claims were submitted to the jury.[9] Consistent with our decision in <u>Hess</u>, we conclude that the district court below properly determined that the trial court did not err in denying PM USA and R.J. Reynolds' requested jury instruction on the fraud statute of repose. We emphasize that evidence of reliance need not be established within the fraud statute of repose period. PM USA and R.J. Reynolds' requested jury instruction would have precluded the jury from considering any evidence of reliance prior to the repose period.[10]

---

9. A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy. <u>Raimi v. Furlong</u>, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). "The gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong which is alleged to have been done pursuant to the conspiracy." <u>Loeb v. Geronemus</u>, 66 So. 2d 241, 243 (Fla. 1953). The critical date for the statute of repose relating to conspiracy claims "should be the date of the last act done in furtherance of the conspiracy." <u>Laschke</u>, 766 So. 2d at 1079.

10. We do not address the constitutional right of access to the courts claim.

- 11 -

We therefore disapprove the decisions of the Fourth District in <u>Naugle</u> and <u>Cohen</u>, which require reliance during the statute of repose period. <u>See Naugle</u>, 103 So. 3d at 947 ("Because fraudulent concealment requires proof of reliance, Naugle's claim is barred unless the record demonstrates that she justifiably relied on statements or omissions made after that date [May 5, 1982].");  <u>Cohen</u>, 102 So. 3d at 15 ("[A]ppellee's fraudulent concealment claim had to be based on conduct that occurred after May 5, 1982—she must prove that Nathan relied upon statements or omissions by appellants made after that date. The jury should have been instructed accordingly.").

## CONCLUSION

In light of the foregoing, we approve the Third District's decision in <u>Frazier</u> to the extent of its conclusion concerning the statute of repose and disapprove <u>Naugle</u> and <u>Cohen</u>.[11]

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

---

11. Because this opinion is limited to the issue of the statute of repose, we therefore express no opinion as to the separate issue addressed by the district court involving the statute of limitations. We note that the certified conflict question in <u>R.J. Reynolds Tobacco Co. v. Ciccone</u>, No. SC13-2415, deals with defining the term "manifestation" as it relates to the smoker's tobacco-related disease or medical condition for purposes of establishing <u>Engle</u> class membership.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Third District - Case No. 3D11-580

(Miami-Dade County)


William Patrick Geraghty, Frank Cruz-Alvarez, and Alexandria Bach Lagos of Shook, Hardy & Bacon L.L.P., Miami, Florida; Raoul G. Cantero, III of White & Case LLP, Miami, Florida; Gregory George Katsas of Jones Day, Washington, District of Columbia; Benjamine Reid, Alina Alonso Rodriguez, and Olga Marie Vieira of Carlton Fields Jorden Burt, P.A., Miami, Florida; and Lauren R. Goldman and Scott A. Chesin of Mayer Brown LLP, New York, New York,

for Petitioners

Philip Maurice Gerson and Edward Steven Schwartz of Gerson & Schwartz, P.A., Miami, Florida,

for Respondent