TAYLOR, J.,
concurring in part and dissenting in part.
I concur in the majority’s decision affirming the trial court’s denial of R.J. Reynolds’s motion for directed verdict and motion for new trial.’ However, I respectfully disagree with the majority’s reversal of thé trial court’s denial of the tobacco company’s motion for remittitur of punitive damages." I also disagree with the majority’s affirmance, on cross-appeal, of the trial court’s reduction of compensatory damages based on comparative fault.
The trial court did not abuse its discretion in denying R.J. Reynolds’s motion for remittitur of the $30 million in punitive damages. The jury’s award was properly based on the evidence presented and, as the trial court determined, it was not excessive under Florida law or federal due process. As our court has recognized in other Engle progeny cases, the purpose of punitive damages is to punish a.defendant’s past wrongful. conduct and deter future misconduct. Philip Morris USA Inc. v. Cohen, 102 So.3d 11, 16 (Fla. 4th DCA 2012). Here, the record is replete with evidence of the tobacco company’s continued attempts to discredit scientific research revealing the potential harm caused by its products, its costly campaign to mislead the public, about the hazards of smoking, and its manipulation of nicotine levels in cigarettes to make them even more addictive. See Lorillard Tobacco Co. v. Alexander, 123 So.3d 67, 79-83 (Fla. 3d DCA 2013) (reviewing a similar record and finding that the evidence supported an award of. $25 million punitive damages against Lorillard). ■
*497 Although the trial court was puzzled by the fact that the jury awarded the plaintiff more than the $25 million requested by plaintiff’s counsel, the court expressly found that the jury’s award “was not infected by bias, prejudice, passion or any other sentiment.” Further, we have long held “that a jury might properly award damages equal to or in excess of those requested by counsel in closing argument.” Lopez v. Cohen, 406 So.2d 1253, 1256 (Fla. 4th DCA 1981). No doubt plaintiff’s counsel asked the jury not to award more than $25 million because this amount has been affirmed by Florida courts. and is thus considered “safe” from reversal on a claim of excessiveness. But there was nothing illogical about the jury’s decision to punish the tobacco company in an amount greater than that argued ' by plaintiffs counsel. The trial court’s statement suggesting that there was no reason for the jury to exceed the award sought by plaintiffs counsel was inconsistent with our precedent in Lopez and does not somehow compel a remittitur.
Likewise, the mere fact that $25 million is the highest award approved thus far on appeal does not mean that it should forever remain a cap. The $30 million punitive damages award in this case is only 20% higher than $25 million and falls within a reasonable range of damages. Furthermore, the 2.9 to 1 ratio of punitive damages to compensatory damages ($10.5 million) is lower than that already approved by other Florida courts. See R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1071-72 (Fla. 1st DCA 2010) (approving a 7.58 to 1 ratio); Owens-Corning Fiberglas v. Ballard, 749 So.2d 483 (Fla.1999) (upholding punitive damages award in an asbestos insulation "case that was nearly 18 times the compensatory damages award). Notably, there are no Engle progeny cases suggesting that a $30 million punitive'damages award is excessive. In light of the historical use of treble damages as a punitive remedy, I cannot conclude that the 2.9 to 1 ratio in this case is excessive. The $30 million punitive damages award "was within constitutional limits, was supported by the evidence, and was an amount that could be adduced' in a logical manner by reasonable persons. I would affirm the trial court’s denial of R.J. Reynolds’s motion for remittitur of the punitive damages award.
I would reverse, however, the trial court’s reduction of the plaintiffs compensatory damages based on the decedent’s comparative fault.. Our comparative fault statute provides an exception for intentional tort claims, and' although a products liability claim was included' in the complaint, this lawsuit, when" 'viewed in its entirely, essentially alleges intentional misconduct by the tobacco company. As the First District found in R.J. Reynolds Tobacco Co. v. Sury, 118 So.3d 849 (Fla. 1st DCA 2013), the “core” of Engle progeny cases is intentional misconduct; The gravamen of the charge is that the tobacco company intentionally "designed its products in a defective manner and pursued a callous and intentional course of tortious conduct by fraudulent concealment. I therefore disagree with the majority’s conclusion that this lawsuit is based on conduct grounded in negligence. But like the majority, I would .use a de novo standard, instead of an abuse, of discretion, standard, in reviewing the trial court’s “core” determination and find that the “core” of Engle progeny actions is intentional misconduct as a matter of law.
Moreover, on the waiver issue, the record does not support the trial court’s finding that the plaintiff waived the intentional tort exception to the comparative fault statute. The facts in this case are more like those in Sury, where the First District found no waiver. Here, the plaintiff made it clear in her complaint and in both open *498 ing statement and closing, argument to the jury that her admission that the decedent bore some responsibility applied only to the negligence and strict liability, claims and not to the intentional tort claims. Further,, the trial court told the jury at the beginning of the trial that the plaintiff sought apportionment only, as to the negligence and strict liability claims and not as to the intentional tort claims, and later instructed the jury that the plaintiff “admitted that on the claims for negligence and defective product, [the decedent] bears some percentage of fault and that his fault was a proximate cause, in combination with the acts of omission of the defendants, of his smoking-related, lung cancer and death.” The trial court also instructed the jury not to make, any reductions in the amount of damages based on the decedent’s fault, but gave no indication that it would reduce the damage award by comparative fault. In- addition, to avoid a claim of waiver, the plaintiff had the trial court change the order of questions on the verdict form so comparative fault came before the intentional tort liability questions. In sum, the record does not shpw that plaintiff did anything to invite the, court to apply comparative fault to her intentional tort claims.
For the above reasons, I would reverse the trial court’s post-trial order on comparative fault and remand for entry' of an amended'judgment awarding plaintiff the full compensatory damages found by the jury. I would affirm in all other respects.